IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| LIVANOVA USA, INC. | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT FOR BREACH OF CONTRACT** |
| DANIEL J. DILORENZO, DILORENZO BIOMEDICAL, LLC (UBI: 602506158), and DILORENZO BIOMEDICAL, LLC (UBI: 604720164), | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Plaintiff LivaNova USA, Inc., files this Complaint and demand for a jury trial against Defendants Dr. Daniel J. DiLorenzo, DiLorenzo Biomedical, LLC (UBI: 604720164), and DiLorenzo Biomedical, LLC (UBI: 602506158).  In support of this Complaint, Plaintiff alleges the following:

## THE PARTIES

1.      Plaintiff LivaNova USA, Inc. is a Delaware corporation with its principal place of business at 100 Cyberonics Blvd., Suite 600, Houston, Texas 77058.

2.      Unless otherwise specified, Plaintiff LivaNova USA, Inc. and all predecessors-in-interest are hereinafter collectively referred to as "Plaintiff" or "LivaNova."

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

3.     Plaintiff's predecessors-in-interests include NeuroBionics Corporation ('NeuroBionics"), BioNeuronics Corporation ("BioNeuronics"), and NeuroVista Corporation ("NeuroVista").

4.     On information and belief, Defendant Daniel J. DiLorenzo ("Dr. DiLorenzo") is a citizen of California, residing at 11247 Wareham Ct., Loma Linda, California, 92354-4875, and maintaining an office at 11234 Anderson St. Rm. 2562B, Loma Linda, California, 92354-280411. He is the sole governor of Defendant DiLorenzo Biomedical, LLC (UBI: 604720164) and was the sole governor of DiLorenzo Biomedical, LLC (UBI: 602506158).

5.     Defendant DiLorenzo Biomedical, LLC (UBI: 604720164) ("DiLorenzo LLC") is a Washington limited liability company with its principal place of business at 522 West Riverside Avenue, Suite N, Spokane, Washington 99201-0580.  Defendant Dr. Daniel J. DiLorenzo is the sole governor of this company.

6.     Defendant DiLorenzo Biomedical, LLC (UBI: 602506158) ("Biomedical LLC") is a limited liability company of the same name with its principal place of business at 1008 6th Avenue North, Suite 302, Seattle, Washington 98109.  Biomedical LLC was administratively dissolved on Sept. 2, 2014.  Defendant Dr. Daniel J. DiLorenzo was also the sole governor of this company.

7.     Unless otherwise specified, Defendants DiLorenzo LLC, Biomedical LLC, and Dr. DiLorenzo are hereinafter collectively referred to as "Defendants."

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over the action under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the suit is between citizens of different states.

9.     This Court has personal jurisdiction over DiLorenzo LLC because it is registered in the state of Washington, with its principal place of business in Spokane, Washington.  Ex. 1 (Annual Report, DiLorenzo Biomedical, LLC, March 13, 2023).

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

10.     This Court has personal jurisdiction over Biomedical LLC because it is registered in the state of Washington, with its principal place of business in Seattle, Washington.  Ex. 2 (Annual Report, DiLorenzo Biomedical, LLC, June 11, 2010).

11.     This court has personal jurisdiction over Dr. DiLorenzo because he is the governor of DiLorenzo LLC, and he consents to personal jurisdiction in King County, Washington, which is in the Western District of Washington, in both the Proprietary Information, Inventions Assignment, and Noncompete Agreement (Feb. 8, 2005) and the Exclusive License Agreement and Amendments to Founder Agreement, Assignment Agreement and Proprietary Information, Inventions Assignment and Noncompete Agreement (May 23, 2005).

12.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.  For example, the contracts-in-suit were entered into and performed in Seattle, Washington, and in those contracts, Defendants consent to venue in King County, Washington, both of which are in the Western District of Washington.  Furthermore, Biomedical LLC had its principal place of business in Seattle, Washington, which is in the Western District of Washington.

## FACTUAL ALLEGATIONS

13.     Plaintiff LivaNova USA, Inc. is an innovative medical device company which designs, develops, manufactures, and sells products and therapies that provide life-changing improvements for people around the world.  Its medically critical products and therapies include heart-lung machines enabling surgeons to perform open-heart surgery and neuromodulation therapy for treating drug-resistant epilepsy.

14.     Dr. DiLorenzo was employed by NeuroBionics and BioNeuronics (predecessors in interest to LivaNova) as Chief Technology Officer from Dec. 14, 2004 to April 28, 2006.  During that time, he executed at least five agreements with NeuroBionics and BioNeuronics (the "Employment Agreements").

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

15. On Dec. 14, 2004, Dr. DiLorenzo executed an "Amended and Restated Founder Agreement" with NeuroBionics, LivaNova's predecessor-in-interest (the "Amended Founder Agreement").

16. The same day, Dr. DiLorenzo executed an "Assignment to NeuroBionics Corporation" (the "Assignment").

17. Two months later, on Feb. 8, 2005, Dr. DiLorenzo executed a "Proprietary Information, Inventions Assignment, and Noncompete Agreement" with NeuroBionics, LivaNova's predecessor-in-interest (the "Inventions Agreement").

18. Four months later, on May 23, 2005, Dr. DiLorenzo and Biomedical LLC executed an "Exclusive License Agreement and Amendments to Founder Agreement, Assignment Agreement and Proprietary Information, Inventions Assignment and Noncompete Agreement" (the "Amending Agreement") with BioNeuronics, successor-in-interest of NeuroBionics, predecessor-in-interest of LivaNova.

19. Less than a year later, on April 18, 2006, Dr. DiLorenzo executed a "Separation Agreement" with BioNeuronics, successor-in-interest of NeuroBionics, predecessor-in-interest of LivaNova.

20. Combined, the agreements contain similar provisions:

- Provisions requiring disclosures by Dr. DiLorenzo to LivaNova;
- Provisions requiring confidentiality by Dr. DiLorenzo;
- Provisions requiring assignment by Dr. DiLorenzo;
- Provisions granting licenses;
- Provisions requiring notice by Dr. DiLorenzo.

21. Dr. DiLorenzo was never employed directly by Plaintiff LivaNova USA, Inc. only its predecessors-in-interest.

**The Disclosure Provisions.**

22. Each of the Employment Agreements required Dr. DiLorenzo to promptly disclose to LivaNova any invention relating to LivaNova's business; inventions resulting from tasks

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

assigned to Dr. DiLorenzo by LivaNova; or inventions resulting from the use of LivaNova's property.

23.    In the Separation Agreement, Dr. DiLorenzo agreed to disclose to LivaNova copies of all existing patent applications naming him as inventor not previously disclosed and copies of any and all new patent applications naming him that were filed at any time before July 28, 2007.

24.    In the Inventions Agreement, Dr. DiLorenzo agreed to promptly disclose to LivaNova, during and after his employment, all inventions and works that he may solely or jointly conceive, develop, or reduce to practice during the period of his employment.

25.    In the Amended Founder Agreement, Dr. DiLorenzo agreed to promptly disclose to LivaNova any invention, modification, or intellectual property right (or any interest therein) that Dr. DiLorenzo created, discovered, invented, or reduced to practice at any time or times during his employment.

26.    During his employment Dr. DiLorenzo filed many patent applications, including— U.S. Patent No. 9,345,880 (applied 01/17/2006) (the "'880 patent"); U.S. Patent No. 7,974,696 (applied 07/23/2005) (the "'696 patent"); US11/151816 (06/13/2005); US60/743294 (02/14/2006); and others (together, "'880 and related patents"). He subsequently added, removed, and altered claims in the '880 and related patent applications over several years. *E.g.*, Ex. 3 (2009-03-11 Amendment, Request for Reconsideration of '880 Patent Application); Ex. 4 (2010-05-16 Amendment, Request for Reconsideration of '880 Patent Application); Ex. 5 (2015-11-06 Amendment, Request for Reconsideration of '880 Patent Application); Ex. 6 (2008-10-02 Amendment, Request for Reconsideration of '696 Patent Application).

27.    At a minimum, Dr. DiLorenzo contends that these patents, applications, and/or inventions relate to the business of LivaNova.

28.    DiLorenzo in fact stated that the '880 and related patents and/or inventions relate to LivaNova's business. *See* Original Complaint For Patent Infringement, *DiLorenzo Biomedical, LLC v. LivaNova, Inc.*, No. 4:23-cv-01800, Dkt. 1 (S.D. Tex. May 17, 2023) (asserting that the

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

'880 patent "has provided a significant advantage in the field of nerve stimulation therapy" and identifying LivaNova products) ("DiLorenzo's Lawsuit").

29.     Dr. DiLorenzo, however, on information and belief, failed to promptly disclose to LivaNova the '880 and related patents and/or inventions.  Dr. DiLorenzo instead disclosed them— not to LivaNova—but to the U.S. Patent and Trademark Office without the consent of LivaNova.

**The Confidentiality Provisions.**

30.     Some of the Employment Agreements required Dr. DiLorenzo to keep information not generally known or available outside of LivaNova, including inventions, confidential.

31.     In the Inventions Agreement, Dr. DiLorenzo agreed to hold in confidence and not directly or indirectly disclose, both during his employment, and at all times after termination, all information not generally known or available outside LivaNova; this includes but is not limited to inventions, works, confidential knowledge, product ideas, techniques, and processes.

32.     In the Amended Founder Agreement, Dr. DiLorenzo agreed to communicate his inventions to BioNeuronics without disclosing to others the same.

33.     Dr. DiLorenzo, however, directly disclosed the inventions described in the '880 and related patents to the U.S. Patent and Trademark Office during and after his employment without the consent of LivaNova.

**The Assignment Provisions.**

34.     Dr. DiLorenzo previously assigned or was required to execute assignments for all patents and/or inventions related to LivaNova's business to LivaNova.

35.     In the Amended Founder Agreement, Dr. DiLorenzo first assigned all continuations and continuations-in-part of U.S. Patent No. 6,366,813 (the "'813 patent") to LivaNova's predecessor-in-interest NeuroBionics Corporation.

36.     Dr. DiLorenzo is the named inventor of the '880 patent, U.S. Patent No. 7,209,787 ("'787 patent"), the '696 patent and other patents in the '813 patent family.  These patents claim priority to the '813 patent, for example, the '880 and '696 patents are continuations-in-part of the '813 patent.  '880 Patent, field (63); '696 Patent, field (63).  Dr. DiLorenzo improperly claims

ownership of some of these patents, including the '880 and '696 patents, refuses to recognize their assignment to LivaNova, and does not intend to assign these patents to LivaNova. *See* DiLorenzo's Lawsuit, Dkt. 1.

37. Dr. DiLorenzo next assigned all of his inventions relating to neuro-diagnostics or -modulation to LivaNova's predecessor-in-interest NeuroBionics Corporation via three agreements.

38. In the Inventions Agreement, Dr. DiLorenzo assigned to NeuroBionics Corp. (and its assigns) all right, title, and interest in all discoveries, developments, ideas, and inventions (including patents and other rights therein) that he conceived, reduce to practiced, or developed during his period of employment by NeuroBionics Corp. that, in whole or in part, pertained to any actual or projected line of business activity of NeuroBionics Corp.

39. In the Assignment Agreement, Dr. DiLorenzo assigned to NeuroBionics Corporation all of his right, title and interest to any and all inventions, patents, patent applications, and other intellectual property related to the Company's business of neurodiagnostics and/or neuromodulation.

40. In the Amended Founder Agreement, Dr. DiLorenzo agreed that if at any during his employment, he made, conceived, created, discovered, invented, or reduced to practice any invention that related the business of NeuroBionics, then that invention would immediately become the sole and absolute property of NeuroBionics and its assigns.

41. Any inventions or applications filed by Dr. DiLorenzo relating to the business of LivaNova were assigned to LivaNova via the above agreements. These inventions, applications, and resulting patents are the sole and absolute property of LivaNova. Dr. DiLorenzo improperly claims ownership of some of these inventions, including the underlying inventions of the '880 and '696 patents; refuses to recognize their assignment to LivaNova; and does not intend to assign these inventions to LivaNova. See DiLorenzo's Lawsuit, Dkt. 1.

42. Dr. DiLorenzo was employed as the Chief Technology Officer of LivaNova from March 31, 2004 to April 28, 2006. During that time, Dr. DiLorenzo filed many patent applications

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

based on inventions that, at a minimum, he contends were related to the business of LivaNova. *See* DiLorenzo's Lawsuit, Dkt. 1 (asserting that the '880 patent "has provided a significant advantage in the field of nerve stimulation therapy" and identifying LivaNova products). Thus, these applications and their underlying inventions were assigned-to and are the sole and absolute property of LivaNova.

**The License Provisions.**

43. LivaNova granted Biomedical LLC a limited license to the assigned patents for use in the treatment of obesity and metabolic disorders. Dr. DiLorenzo granted LivaNova a license to other, unassigned patents for use in the treatment of epilepsy. LivaNova never granted a license directly to Dr. DiLorenzo.

44. As part of the Amending Agreement, Dr. DiLorenzo granted LivaNova an exclusive license to LivaNova for use in epilepsy applications.

45. As part of the Separation Agreement, Dr. DiLorenzo granted LivaNova a perpetual, worldwide, exclusive license to make, use, sell, offer for sale, import, export and sublicense devices and methods for the treatment, diagnosis or amelioration of epilepsy and or the symptoms thereof (together with above, "Epilepsy License").

46. Conversely, as part of the Amending Agreement, LivaNova granted a limited license to Biomedical LLC for sympathetic nervous system modulation therapy and for neuromodulation therapy for treating obesity and other metabolic disorders (the "Obesity License").

47. Dr. DiLorenzo now seeks to improperly expand the scope of the obesity license, contradicting his previous correspondence with LivaNova.

48. In correspondence with LivaNova on April 22, 2013, Dr. DiLorenzo admitted that the ownership of the IP was divided along fields of use, his being metabolism and autonomic structures (amygdala, hypothalamus, etc.) and LivaNova's being in epilepsy *and other areas*.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

49.     Further, in over a decade of correspondence with LivaNova, Dr. DiLorenzo never suggested that he had rights in the field of epilepsy treatment or rights outside the field of obesity treatment and metabolic disorders.

50.     Now, almost twenty years later, Dr. DiLorenzo claims that the obesity license contains rights outside of obesity treatment—expanding (of course) to products LivaNova has been producing and selling for over eight years.  *See* DiLorenzo's Lawsuit, Dkt. 1 (asserting that the '880 patent "has provided a significant advantage in the field of nerve stimulation therapy" and identifying LivaNova products used to treat epilepsy).

**The Notice Provisions**

51.     Dr. DiLorenzo was also required to notify LivaNova of possible patent infringement of any licensed or related products.

52.     In the Inventions Agreement, Dr. DiLorenzo agreed to promptly inform LivaNova if during his employment he used or incorporated into a project, product, or process any invention not assigned to LivaNova in which he had an interest.

53.     Similarly, in the Amending Agreement, Dr. DiLorenzo agreed to promptly inform LivaNova of suspected infringement and agreed to seek LivaNova's approval before filing suit.

54.     Dr. DiLorenzo was aware of these requirements.

55.     For example, on November 18, 2020, Dr. DiLorenzo, via his attorney, sent correspondence to Jonathan Rowell, Senior IP Counsel of LivaNova stating that Dr. DiLorenzo had identified a potential infringer.

56.     At no point, however, during or after his employment did Dr. DiLorenzo promptly inform LivaNova that he allegedly incorporated into a LivaNova product or process intellectual property in which he had an interest.  In fact, during this time, Dr. DiLorenzo never mentioned the possibility that LivaNova was infringing his patents because LivaNova was already the absolute owner or exclusive licensee of any related intellectual property.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

57.     Likewise, at no point during ten years of post-employment discussion between LivaNova and Dr. DiLorenzo, including eight years of LivaNova's products being on the market, did Dr. DiLorenzo inform LivaNova that its products infringed his intellectual property.

58.     Only now does Dr. DiLorenzo allege that some of LivaNova's products practice his unassigned inventions by filing a patent infringement lawsuit against LivaNova without approval or notice. *See* DiLorenzo's Lawsuit, Dkt. 1.  For example, he alleges that the claimed invention of the '880 and related patents are practiced in LivaNova Aspire SR™ (Model 106), SenTiva™ (Model 1000), and SenTiva Duo™ (Model 1000-D) VNS Therapy™ systems. *Id*.

59.     Dr. DiLorenzo also previously released LivaNova from liability for these claims.

60.     In the Separation Agreement, Dr. DiLorenzo waived and released LivaNova from all claims, demands, actions, or causes of action of any kind which he had or may ever have against LivaNova arising out of his employment.

61.     Also in the Separation Agreement, Dr. DiLorenzo agreed to pay, or reimburse, LivaNova for all reasonable costs incurred in defending against a claim subject to release.

62.     As a result of Defendants' conduct, LivaNova has suffered extensive damages, including loss of income from unassigned intellectual property and the cost and inconvenience of defending against baseless lawsuits.


## COUNT I

### Breach of Contract of the Separation Agreement for Failure to Disclose
### the '880, '696, and Other Related Patents and/or Inventions

63.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

64.     LivaNova entered into a valid and binding Contract, the Separation Agreement, under which Defendants agreed to disclose all patent applications naming Dr. DiLorenzo as inventor filed before July 28, 2007 as well as their underlying inventions.  LivaNova performed according to the terms of the contract.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

65.     Defendants breached the contract by not disclosing the applications and/or inventions of the '880, '696, and related patents.

66.     As a direct and proximate result of Defendants' breach and the other Counts in this Complaint, Plaintiff has been damaged in an amount exceeding $75,000, including but not limited to incidental and consequential damages, all to be proved at trial.

<u>**COUNT 2**</u>

**<u>Breach of Contract of the Inventions Agreement as Amended by the Amending Agreement</u>**

67.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

*Failure to Disclose the '880, '696, and Other Related Patents or Inventions*

68.     LivaNova entered into a valid and binding Contract, the Invention Agreement, under which Defendants agreed to promptly disclose to LivaNova all inventions and works that Dr. DiLorenzo developed during his period of employment.  LivaNova performed according to the terms of the contract.

69.     Defendants breached the contract by not disclosing the applications and/or inventions of the '880, '696, and related patents.

*Disclosure of Confidential Information*

70.     LivaNova entered into a valid and binding Contract, the Invention Agreement, under which Defendants agreed to hold in confidence and not directly or indirectly disclose, all information not generally known or available outside LivaNova, including inventions.  LivaNova performed according to the terms of the contract.

71.     Defendants breached the contract by directly disclosing the inventions in the '880 and related patents to the U.S. Patent and Trademark Office during Dr. DiLorenzo's employment and without the consent of BioNeuronics.

*Failure to Assign the '880 and Related Patents and/or Inventions*

72.     LivaNova entered into a valid and binding Contract, the Inventions Agreement, under which Defendants assigned to LivaNova inventions developed during Dr. DiLorenzo's

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  employment that related to any actual or projected line of business activity of LivaNova.  LivaNova
2  performed according to the terms of the contract.

3        73.     Defendants breached the contract by improperly claiming ownership of some of
4  these inventions, refusing to recognize their assignment to LivaNova, and/or refusing to assign
5  them to LivaNova.

6  *Failure to Notify LivaNova of Alleged Patent Infringement*

7        74.     LivaNova entered into a valid and binding contract, the Inventions Agreement,
8  under which Defendants agreed to promptly inform LivaNova if Dr. DiLorenzo incorporated into
9  a project or process, during his employment, any intellectual property not assigned to LivaNova
10 in which he had an interest.  LivaNova performed according to the terms of the contract.

11       75.     Defendants breached the contract by not informing LivaNova that Dr. DiLorenzo
12 had allegedly incorporated his intellectual property claimed in the '880 and related patents.

13       76.     As a direct and proximate result of Defendants' breaches and the other Counts in
14 this Complaint, Plaintiff has been damaged in and amount exceeding $75,000, including but not
15 limited to incidental and consequential damages, all to be proved at trial.

16 <u>**COUNT 3**</u>

17 <u>**Breach of Contract of the Amended Founder Agreement as**</u>

18 <u>**Amended by the Amending Agreement**</u>

19       77.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

20 *Failure to Disclose the '880, '696, and Other Related Patents or Inventions*

21       78.     LivaNova entered into a valid and binding Contract, the Amended Founder
22 Agreement, under which Defendants agreed to promptly disclose any invention or intellectual
23 property right that Dr. DiLorenzo created at any time during his employment.   LivaNova
24 performed according to the terms of the contract.

25       79.     Defendants breached the contract by not disclosing the applications and/or
26 inventions of the '880, '696, and related patents.

27

28

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Disclosure of Confidential Information*

80.     LivaNova entered into a valid and binding Contract, the Amended Founder Agreement, under which Defendants agreed not to disclose to others information about Dr. DiLorenzo's inventions related to LivaNova.  LivaNova performed according to the terms of the contract.

81.     Defendants breached the contract by directly disclosing the inventions in the '880 and related patents to the U.S. Patent and Trademark Office during his employment and without the consent of LivaNova.

*Failure to Assign U.S. Patent No. 9,345,880 or 7,974,696 in the '813 Patent Family*

82.     LivaNova entered into a valid and binding contract, the Amended Founder Agreement, under which Defendants assigned the '813 patent family, including the '880 and '696 patent, to LivaNova.  LivaNova performed according to the terms of the contract.

83.     Defendants breached the contract by improperly claiming ownership of  some of these patents, including the '880 and '696 patents, refusing to recognize their assignment to LivaNova, and/or refusing to assign them to LivaNova.

*Failure to Assign the '880 and Related Patents and/or Inventions*

84.     LivaNova entered into a valid and binding Contract, the Amended Founder Agreement, under which Defendants, during Dr. DiLorenzo's employment, assigned to LivaNova any invention relating to LivaNova's business.  LivaNova performed according to the terms of the contract.

85.     Defendants breached the contract by improperly claiming ownership of some of these inventions, refusing to recognize their assignment to LivaNova, and/or refusing to assign them to LivaNova.

86.     As a direct and proximate result of Defendants' breaches and the other Counts in this Complaint, Plaintiff has been damaged in an amount exceeding $75,000, including but not limited to incidental and consequential damages, all to be proved at trial.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### COUNT 4

**Breach of Contract of the Assignment Agreement as Amended by the Amending**

**Agreement for Failure to Assign the '880 and Related Patents and/or Inventions**

87.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

88.     LivaNova entered into a valid and binding Contract, the Assignment Agreement, under which Defendants assigned to LivaNova any invention relating to LivaNova's business.

89.     LivaNova performed according to the terms of the contract.  Defendants breached the contract by improperly claiming ownership of some of these inventions, refusing to recognize their assignment to LivaNova, and/or refusing to assign them to LivaNova.

90.     As a direct and proximate result of Defendants' breach and the other Counts in this Complaint, Plaintiff has been damaged in an amount exceeding $75,000, including but not limited to incidental and consequential damages, all to be proved at trial.

### COUNT 5

**Breach of Contract of Amending Agreement for Failure to**

**Notify LivaNova of Patent Infringement**

91.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

92.     LivaNova entered into a valid and binding contract, the Amending Agreement, under which Defendants agreed to promptly inform LivaNova of any suspected infringement, and to seek approval from LivaNova before filing suit.  LivaNova performed according to the terms of the contract.

93.     Defendants breached the contract by filing a lawsuit against LivaNova alleging patent infringement without providing notice to LivaNova or receiving consent from LivaNova.

94.     As a direct and proximate result of Defendants' breach and the other Counts in this Complaint, Plaintiff has been damaged in an amount exceeding $75,000, including but not limited to incidental and consequential damages, all to be proved at trial.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

## COUNT 6

### Breach of Contract of Implied Covenant Not to Sue for Infringement

95.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

96.     LivaNova entered into a valid and binding Contract, the Amending Agreement, under which Defendants granted LivaNova exclusive license for epilepsy applications.

97.     LivaNova also entered in to a valid and binding Contract, the Separation Agreement, under which Dr. DiLorenzo granted LivaNova exclusive license for devices and methods for the treatment, diagnosis, or amelioration of epilepsy and or the symptoms thereof.

98.     Defendants know that they granted LivaNova a license for the field of epilepsy. And licenses contain an implied covenant not to sue the licensee for actions within the scope of the license.  *See De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 242 (1927).

99.     Defendants, therefore, breached the Separation Agreement by filing a lawsuit against LivaNova alleging patent infringement for actions within the scope of LivaNova's license.

100.     As a direct and proximate result of Defendants' breach and the other Counts in this Complaint, Plaintiff has been damaged in an amount exceeding $75,000, including but not limited to incidental and consequential damages, all to be proved at trial.

## COUNT 7

### Breach of Fiduciary Duty

101.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

102.     Dr. DiLorenzo was acting as a fiduciary of LivaNova as a corporate officer.  *In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343, 358 (Del. Ch. 2023) (fiduciary duty); WASH. REV. CODE 23B.08.420 (1989) (same).

103.     Dr. DiLorenzo breached his duty of loyalty to LivaNova when, on information and belief, he never specifically disclosed the '880, '696, and other patents and/or inventions to LivaNova.  Defendants believed that the '880, '696, and other patents and/or inventions related to the business of LivaNova and therefore should have been assigned to LivaNova.  On information and belief, Defendants concealed these relations because they knew omission would prevent

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

assignment of the patents, enriching Defendants at the expense of shareholders/members and placing Defendants in direct competition with LivaNova.

104.    Dr. DiLorenzo's breach harmed LivaNova because LivaNova relied on Dr. DiLorenzo's material omissions at least when it defined the scope for the patent licenses granted from LivaNova to Biomedical LLC, from Dr. DiLorenzo to LivaNova, and in foregoing its rights under the agreements.

105.    As a direct and proximate result of Defendants' breach of fiduciary duty and the other Counts in this Complaint, Plaintiff has been damaged an amount exceeding $75,000, including, but not limited to, incidental and consequential damages, all to be proved at trial.

## **COUNT 8**

### **Declaratory Judgement**

106.    Plaintiff restates and realleges the preceding paragraphs of this Complaint.

*Ownership of U.S. Patent No. 7,974,696*

107.    LivaNova entered into a valid and binding contract, the Amended Founder Agreement, under which Defendants assigned the '813 patent and provisional applications, continuations, and continuations in part naming the '813 patent or any of its filings as the parent case to LivaNova.  LivaNova performed according to the terms of the contract.

108.    LivaNova also entered into several valid and binding contracts—the Inventions Agreement, the Assignment Agreement, and the Amended Founders Agreement—under which Defendants assigned all inventions relating to the business of LivaNova to LivaNova.  LivaNova performed according to the terms of the contracts.

109.    Dr. DiLorenzo is the named inventor on the '696 patent.  The '696 patent claims priority to the '813 patent family.  Dr. DiLorenzo claims that the underlying inventions in similar patents relate to the business of LivaNova.

110.    Defendants and LivaNova have adverse legal interest creating a real and immediate controversy.  LivaNova seeks to assert its rights as the owner of the '696 patent.  Defendants dispute that the '696 patent and related inventions were assigned-to and are the sole and absolute

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

property of LivaNova.  Defendants also refuse to assign the '696 patent to LivaNova.  Defendants now assert that LivaNova infringes patents filed during Dr. DiLorenzo's employment and infringes patents to which Defendants claim a license.

111.    LivaNova therefore requests a judgement from the Court declaring that LivaNova is the owner of the '696 patent.

*Release of Claims and Reimbursement*

112.    Defendants and LivaNova have adverse legal interest.  Defendants entered into a valid and binding contract, the Separation Agreement, under which they agreed to waive and release LivaNova from all claims related to or arising out of Dr. DiLorenzo's employment.

113.    In the same agreement Defendants agreed to pay or reimburse LivaNova for all reasonable expenses, fees, and costs incurred in defending against a claim subject to release.

114.    This controversy is real and immediate.  Defendants now assert that LivaNova infringes patents filed during Dr. DiLorenzo's employment and infringes patents to which Defendants claim a license.

115.    Plaintiff therefore requests a judgement from the Court declaring that LivaNova is entitled to reimbursement from Dr. DiLorenzo for all reasonable expenses, fees, and costs incurred defending against DiLorenzo's Lawsuit, and this suit.  Plaintiff also request judgement from the Court declaring that Defendants have waived and released LivaNova from all claims related to licenses arising from Dr. DiLorenzo's employment with NeuroBionics and BioNeuronics.

## **COUNT 9**

### **Fraudulent Concealment of U.S. Patent No. 9,345,880,**

### **U.S. Patent No. 7,974,696, and Related Patents**

116.    Plaintiff restates and realleges the preceding paragraphs of this Complaint.

117.    Defendants did not disclose required information to LivaNova.  This omission is equivalent to a false statement of fact.  Dr. DiLorenzo as corporate officer and party to the Employment Agreements owed LivaNova a duty to "promptly disclose to" LivaNova "any invention . . . or intellectual property right whatsoever . . . that [] relates to the business" of

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

LivaNova.    Amended   Founder   Agreement   § 2(b);   *see also*   Complaint   ¶¶ 19, 23–26;   *In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343, 358 (Del. Ch. 2023) (fiduciary duty); WASH. REV. CODE 23B.08.420 (1989) (same).   On information and belief, Dr. DiLorenzo never specifically disclosed the '880, '696, and other patents and/or inventions to LivaNova.   This omission is a breach of duty and equivalent to a representation of fact that the '880, '696, and other patents and/or inventions did not relate to LivaNova's business.

118.    Defendants' omission was intentional and material.   Defendants believed that the '880, '696, and other patents related to the business of LivaNova and therefore should have been assigned to LivaNova.   On information and belief, Defendants concealed these relations because they knew omission would prevent assignment of the patents.   And LivaNova further relied on these material omissions at least when it defined the scope for the patent licenses granted from LivaNova to Biomedical LLC, from Dr. DiLorenzo to LivaNova, and in foregoing its rights under the agreements.

119.    LivaNova justifiably relied on these material omissions.   LivaNova had no knowledge of the '880, '696, and other patents and/or inventions because it justifiably relied on Defendants' statements and omissions of Dr. DiLorenzo, a fiduciary with (at the time) superior knowledge of the content of the '880, '696, and related patents as their inventor.

120.    As a direct and proximate result of Defendants' fraudulent concealment and the other Counts in this Complaint, Plaintiff has been damaged in an amount exceeding $75,000, including but not limited to incidental and consequential damages, all to be proved at trial.

### <u>COUNT 10</u>

**Negligent Misrepresentation that U.S. Patent No. 9,345,880, U.S. Patent No. 7,974,696, and Related Patents Were Not Relevant to LivaNova's Business**

121.    Plaintiff restates and realleges the preceding paragraphs of this Complaint.

122.    Defendants did not disclose required information to LivaNova.   This omission is equivalent to a negligent misrepresentation.   Dr. DiLorenzo, as corporate officer and party to the Employment Agreements, owed LivaNova a duty to disclose his inventions, patent applications,

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

and patents relating to LivaNova's business.  On information and belief, Dr. DiLorenzo never specifically disclosed the '880, '696, and other patents and/or inventions to LivaNova.  This omission is a breach of duty and equivalent to a misrepresentation that the '880, '696, and related patents and/or inventions did not relate to LivaNova's business.

123.    On information and belief, Dr. DiLorenzo's lack of disclosure and the corresponding representation of fact were provided by him to misguide LivaNova in its requests for assignment, licensing agreements with Biomedical LLC, and other agreements with Dr. DiLorenzo.

124.    Dr. DiLorenzo, as a Chief Technology Officer, inventor of the licensed patents, and license counterparty, knew or should have known that LivaNova would rely on his disclosures (or omissions).  Dr. DiLorenzo knew that '880, '696, and other patents and/or inventions related to the business of LivaNova and, therefore, he was obligated to assign them.  But, on information and belief, he failed to disclose this information because he knew his omission would prevent LivaNova from exercising its ownership and right to assignment of the patents and inventions.

125.    As a result, LivaNova was unable to exercise its rights because it was not notified.  And LivaNova further relied on these material omissions when it defined the scope of the patent licenses granted from LivaNova to Biomedical LLC, from Dr. DiLorenzo to LivaNova, and in foregoing its rights under the agreements.

126.    LivaNova justifiably relied on these material omissions. LivaNova had no knowledge of the scope of Dr. DiLorenzo's patents and/or inventions and justifiably relied on Dr. DiLorenzo's statements and omissions because Dr. DiLorenzo was a fiduciary and had (at the time) superior knowledge of the content of the '880, '696, and related patents and/or inventions as their inventor.

127.    As a direct and proximate result of Defendants' negligent misrepresentations and the other Counts in this Complaint, Plaintiff has been damaged in an amount exceeding $75,000, including but not limited to incidental and consequential damages, all to be proved at trial.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## COUNT 11

### Conversion of U.S. Patent No. 9,345,880, U.S. Patent No. 7,974,696, and Related Patents

128.    Plaintiff restates and realleges the preceding paragraphs of this Complaint.

129.    LivaNova is the sole and absolute owner of the '880, '696, and related patents.

130.    Defendants intentionally refuse to assign the '880, '696, and related patents to LivaNova.  Defendants are thereby unlawfully retaining physical U.S. Patent and Trademark certificates and prohibiting LivaNova from exercising its absolute ownership right to make, use, sell, offer for sale, and import the "system for modulation of the sympathetic nervous system . . . comprising . . . a sensing-module" described in said documents.  '880 Patent col. 43 l. 2–4.

131.    Conversion can apply to intangible rights.  *See* Restatement (Second) of Torts § 242 (1965); *Butko v. Stewart Title Co. of Washington*, 99 Wash. App. 533, 538 (2000).

132.    As a direct and proximate result of Defendants' conversion and the other Counts in this Complaint, Plaintiff has been damaged in an amount exceeding $75,000, including but not limited to incidental and consequential damages, all to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff LivaNova USA, Inc. respectfully requests that this Court:

1.    Award damages to Plaintiff and against Defendants, jointly and severally, in an amount exceeding $75,000, plus additional incidental and consequential damages, and attorney's fees all to be proved at trial;

2.    Award pre-judgment interest to Plaintiff and against Defendants, jointly and severally, on all sums, at the highest allowable rate;

3.    Order Defendants to assign U.S. Patent No. 7,974,696 to Plaintiff as required by the Amended Founder Agreement and the Assignment;

4.    Order Defendants to assign U.S. Patent No. 9,345,880 to Plaintiff as required by the Amended Founder Agreement and the Assignment;

5.    Order Defendants to assign the inventions described in the '880, '696, and related patents to Plaintiff as required by the Inventions Agreement;

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

6.     Order Defendants to assign the inventions described in the '880, '696, and related patents to Plaintiff as required by the Amended Founder Agreement;

7.     Order Defendants to assign the inventions described in the '880, '696 and related patents to Plaintiff as required by the Assignment Agreement;

8.     Declare that Plaintiff is the owner of the '696 patent;

9.     Declare that Plaintiff is entitled to reimbursement from Dr. DiLorenzo for all reasonable expenses, fees, and costs incurred defending against DiLorenzo's Lawsuit, and this suit;

10.    Award Plaintiff such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a jury trial on all issues so triable.

Dated:                                    February 16, 2024.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC

By *s/ Christopher T. Wion*
      Christopher T. Wion, WSBA #33207
      chrisw@summitlaw.com

By *s/ Molly J. Gibbons*
      Molly J. Gibbons, WSBA #58357
      mollyg@summitlaw.com

      315 Fifth Avenue S., Suite 1000
      Seattle, WA 98104-2682
      Tel: 206-676-7000

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

FISH & RICHARDSON P.C.

By:  _s/ Benjamin C. Elacqua_
Benjamin C. Elacqua, Texas Bar No.
24055443 *(pro hac vice forthcoming)*
elacqua@fr.com

Ethan K. Kovar, Texas Bar No. 24138134
*(pro hac vice forthcoming)*
kovar@fr.com

Kathryn Quisenberry, Texas Bar No.
24105639 *(pro hac vice forthcoming)*
quisenberry@fr.com

909 Fannin Street, Suite 2100
Houston, TX 77010
Tel: (713) 654-5300

**ATTORNEYS FOR PLAINTIFF LIVANOVA USA, INC.**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# EXHIBIT 1

*LivaNova USA, Inc. v DiLorenzo, et al.*

## COMPLAINT FOR BREACH OF CONTRACT



**WASHINGTON**
Secretary of State
**Corporations & Charities Division**

Filed
Secretary of State
State of Washington
Date Filed: 03/13/2023
Effective Date: 03/13/2023
UBI #: 604 720 164

# Annual Report

## BUSINESS INFORMATION

Business Name:
**DILORENZO BIOMEDICAL, LLC**

UBI Number:
**604 720 164**

Business Type:
**WA LIMITED LIABILITY COMPANY**

Business Status:
**ACTIVE**

Principal Office Street Address:
**522 W RIVERSIDE AVE STE N, SPOKANE, WA, 99201-0580, UNITED STATES**

Principal Office Mailing Address:
**522 W RIVERSIDE AVE STE N, SPOKANE, WA, 99201-0580, UNITED STATES**

Expiration Date:
**03/31/2024**

Jurisdiction:
**UNITED STATES, WASHINGTON**

Formation/Registration Date:
**03/03/2021**

Period of Duration:
**PERPETUAL**

Inactive Date:

Nature of Business:
**INTELLECTUAL PROPERTY AND TECHNOLOGY DEVELOPMENT**

## REGISTERED AGENT    RCW 23.95.410

| Registered Agent Name | Street Address | Mailing Address |
|---|---|---|
| NORTHWEST REGISTERED AGENT, LLC | 522 W RIVERSIDE AVE STE N, SPOKANE, WA, 99201-0580, UNITED STATES | 522 W RIVERSIDE AVE STE N, SPOKANE, WA, 99201-0580, UNITED STATES |

## PRINCIPAL OFFICE

Phone:
**5042207109**

Email:
**DJDILORE@ALUM.MIT.EDU**

This document is a public record. For more information visit www.sos.wa.gov/corps

Work Order #: 2023031300190968 - 1
Received Date: 03/13/2023
Amount Received: $60.00

Street Address:
**522 W RIVERSIDE AVE STE N, SPOKANE, WA, 99201-0580, USA**

Mailing Address:
**522 W RIVERSIDE AVE STE N, SPOKANE, WA, 99201-0580, USA**

## GOVERNORS

| Title | Type | Entity Name | First Name | Last Name |
|-------|------|-------------|------------|-----------|
| GOVERNOR | INDIVIDUAL | | DANIEL J | DILORENZO |

## NATURE OF BUSINESS

ı  INTELLECTUAL PROPERTY AND TECHNOLOGY DEVELOPMENT

## EFFECTIVE DATE

Effective Date:
**03/13/2023**

## CONTROLLING INTEREST

1.  Does this entity own (hold title) real property in Washington, such as land or buildings, including leasehold improvements?
**- No**
2.  In the **past 12 months**, has there been a transfer of at least 16-2/3 percent of the ownership, stock, or other financial interest in the entity?
**- No**
    a.  If "Yes", in the **past 36 months**, has there been a transfer of controlling interest (50 percent or greater) of the ownership, stock, or other financial interest in the entity?
**- No**
3.  If you answered "Yes" to question 2a, has a controlling interest transfer return been filed with the Department of Revenue?
**- No**

You **must** submit a Controlling Interest Transfer Return form if you answered "yes" to questions 1 **and** 2a.

Failure to report a Controlling Interest Transfer is subject to penalty provisions of RCW 82.45.220.

For more information on **Controlling Interest**, visit www.dor.wa.gov/REET.

## RETURN ADDRESS FOR THIS FILING

Attention:
Email:
Address:

## UPLOAD ADDITIONAL DOCUMENTS

Do you have additional documents to upload? **- No**

## AUTHORIZED PERSON

☐ I am an authorized person.

Person Type:

**INDIVIDUAL**

First Name:

**NAT**

Last Name:

**SMITH**

Title:

**AUTHORIZED PERSON**

☑ This document is hereby executed under penalty of law and is to the best of my knowledge, true and correct.

---

**Work Order #: 2023031300190968 - 1**
**Received Date: 03/13/2023**
**Amount Received: $60.00**

# EXHIBIT 2

*LivaNova USA, Inc. v DiLorenzo, et al.*

**COMPLAINT FOR BREACH OF CONTRACT**

**LICENSING**

**Secretary of State**

RENEW YOUR
# Corporation or LLC

 Print

**DILORENZO BIOMEDICAL, LLC**
**UBI : 602 506 158**

## Thank you for renewing online
Your annual report has been completed and submitted. Please print this receipt for
your records and allow 14 days to receive your license document in the mail.

Completed date and time:   Jun 11 2010 4:15PM Pacific Time
Transaction number:          2010 162 5502
Credit card approval number: 2762981000013322364262

| Your company | |
|---|---|
| Company name: | DILORENZO BIOMEDICAL, LLC |
| Unified business ID: | 602 506 158 |
| State of formation: | Washington |
| Date of formation: | 05/24/2005 |
| Expiration date: | 05/31/2011 |

| Your fees | | |
|---|---|---|
| Domestic Limited Liability Company: | $ | 50.00 |
| Renewal application fee: | $ | 9.00 |
| Delinquency fee: | $ | 25.00 |
| Total fees: | $ | 84.00 |
| Previous payment: | $ | 0.00 |
| Total amount charged: | $ | 84.00 |

| Business information | |
|---|---|
| Principal place of business: | P.O. Box 19818<br>Seattle, Washington  98109<br>United States |
| Company telephone number: | (504) 220 7109 |
| Company email address: | None provided |
| My company is managed by: | Members |
| Does your company own land, buildings or other real property in Washington? | No |

| Nature of business | |
|---|---|
| Type: | Professional, Scientific, and Technical Services |

| Governing people | | |
|---|---|---|
| DANIEL DILORENZO | Member | PO BOX 300905<br>HOUSTON, Texas  77230<br>United States |

| Registered agent | |
|---|---|
| Agent type on file: | No agent type on file. |
| Agent on file: | DANIEL J DILORENZO |
| Agent's office street address on file: | 1008 6TH AVE N STE 302<br>SEATTLE, Washington  98109<br>United States |
| Agent's mailing address on file: | PO BOX 19818<br>SEATTLE, Washington  98109<br>United States |
| Request agent type change to: | Individual |

**Person completing this renewal**

| | |
|---|---|
| Submitted By: | DANIELJ DILORENZO |
| Title: | Member |
| Renewal certification: | I am the person listed above and I certify under penalty of perjury that the renewal information submitted is true and correct to the best of my knowledge. I understand that deliberately submitting false information may be punishable as a gross misdemeanor. RCW 43.07.210 |

Home | Contact Us | Privacy | Credit Card Security | Conditions of Use | Copyright copy; 2009 DOL

# EXHIBIT 3

*LivaNova USA, Inc. v DiLorenzo, et al.*

## COMPLAINT FOR BREACH OF CONTRACT

Customer No.: 26308                                                          *Patent*

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant: | Daniel DiLorenzo | Attorney Docket No.: 9816.20856/ANSTIM 01.02 |
| Serial No.: | 11/333,979 | Examiner: Getzow, Scott M. |
| Filed: | 17 January 2006 | Group Art Unit: 3762 |
| Title: | Closed-Loop Feedback-Driven Sympathetic Neuromodulation for Affect Control | |

## AMENDMENT A

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

This Amendment A responds to the Non-Final Office Action mailed September 8, 2008.

An automatic three month extension of time, up to and including 9 March, 2009 (8 March, 2009 falls on a Sunday) is respectfully requested. The requisite fee accompanies this Amendment A.

In response to the Office Action dated September 8, 2008, please amend the above referenced application as follows:

03/11/2009 RFERADU1 00000006 11333979
02 FC:2201                              550.00 OP
03 FC:2202                              130.00 OP

# EXHIBIT 4

*LivaNova USA, Inc. v DiLorenzo, et al.*

**COMPLAINT FOR BREACH OF CONTRACT**

Customer No.:  33333                                                                        *Patent*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:      Daniel DiLorenzo                          Attorney Docket No.: ANSTIM 01.02

Serial No.:     11/333,979                                   Examiner: Getzow, Scott M.

Filed:          17 January 2006                             Group Art Unit: 3762

Title:          Closed-Loop Feedback-Driven Sympathetic Neuromodulation for Affect Control

### PRELIMINARY AMENDMENT B2

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

This Preliminary Amendment B2 replaces Amendment B, which was received by the U.S. Patent Office on December 7, 2009.

This Amendment B responded to the Non-Final Office Action mailed June 12, 2009 and to Examiner interview conducted November 25, 2009 with Examiner Getzow..

An automatic three month extension of time, up to and including December 12, 2009  was respectfully requested and paid for by DiLorenzo Biomedical check #1098, in the amount of $555.00, mailed December 7, 2009.  At that time, payment for the excess claims fee was not made.

On January 19, 2010, a Notice of Insufficient Funds, detailing the $688.00 fees for 2 additional independent claims added (2 x $110 = $220) and 18 additional total claims added (18 x $26 = $468), was mailed.  That requisite excess claims fee of $688.00 and the appropriate 3 month extension fee of $555.00 (providing an extension to and including May 19, 2010), totaling $1243.00 accompany this Amendment B2.

In response to the Office Action dated June 12, 2009, please amend the above referenced application as follows:

# EXHIBIT 5

*LivaNova USA, Inc. v DiLorenzo, et al.*

**COMPLAINT FOR BREACH OF CONTRACT**

Customer No.:  33333                                                                    *Patent*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant: | Daniel DiLorenzo | Attorney Docket No.: ANSTIM 01.02 |
| Serial No.: | 11/333,979 | Examiner: Getzow, Scott M. |
| Filed: | 17 January 2006 | Group Art Unit: 3762 |
| Title: | Closed-Loop Feedback-Driven Sympathetic Neuromodulation for Affect Control | |

### REQUEST FOR COTINUED EXAMINATION
### AND AMENDMENT C

Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

This Amendment D is in response to Non-Final Office Action dated June 6, 2015 and signed by Examiner Getzow, which was in response to RCE and Amendment C.

Previously filed Amendment C and Request for Continued Examination were in response to Final Rejection dated December 13, 2010, which was in response to Preliminary Amendment B2 filed May 16, 2010.  Previous Amendment B, which was mailed December 6, 2009 and recorded as filed on December 7, 2009, responded to the Non-Final Office Action mailed June 12, 2009 and to Examiner interview conducted November 25, 2009 with Examiner Getzow.

An automatic extension of time, up to and including November 6, 2015 is respectfully requested and paid for.  The requisite fee accompanies this Amendment D.

In response to the Office Action dated June 6, 2015, please amend the above referenced application as follows:

# EXHIBIT 6

*LivaNova USA, Inc. v DiLorenzo, et al.*

**COMPLAINT FOR BREACH OF CONTRACT**

Customer No.: 26308                                                      *Patent*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:      DiLorenzo, Daniel John              Attorney Docket No.: 9816.20586/ANSTIM 01.01

Serial No.:     11/187,315                                    Examiner: Getzow, Scott M

Filed:          23 July 2005                                  Group Art Unit: 3762

Title:          Closed-Loop Sympathetic Neuromodulation For Optimal Control Of Disease

### AMENDMENT A

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

This Amendment A responds to the Office Action mailed 27 March 2008.

An automatic three month extension of time, up to and including 27 September 2008 is respectfully requested. The requisite fee accompanies this Amendment.

In response to the Office Action dated 27 March 2008, please amend the above referenced application as follows:

10/03/2008 MBLANCO  00000009 11187315
01 FC:2201                                315.00 OP
02 FC:2202                                 75.00 OP